STATE
v.
READ.

## SUCCESSION OF DANIEL STOCKING.

The endorsement of credits on a promissory note within five years, is not such evidence as will bar prescription, unless the credits are proved to have been paid.

A workman is not entitled to a privilege upon a succession for his services, unless the things upon which he worked exist at the time of the decease of the testator; and to entitle him to a privilege on the funds to be distributed, it must appear that they are the proceeds of the sale of the things worked upon by him. C. C. 3184.

An attorney at law has no authority to execute in the name of his client, a release to make an interested witness competent, unless he be specially empowered so to do.

APPEAL from the District Court of West Feliciana, *Stirling*, J. A statement of the facts of this case will be found in the briefs of the counsel engaged in the case.

*Brewer* and *Collins*, for appellee, contended : *Daniel Stocking* died on the 1st day of January, 1848. *John C. Morris* applied for letters of curatorship on the 7th of January, 1848; his application was published on the 8th of January, 1848, and he was appointed on the 12th of February, 1848. There was no opposition made to his application. On the 10th day of May, 1849, *Morris* filed an account and tableau of distribution, (the succession being insolvent,) upon which account he placed himself as a privileged creditor of the fifth rank, for

Succession of the sum of $139 47, for supplies of provisions, &c., to the deceased, and as an Stocking. ordinary creditor for the sum of $650 83.

*Jesse Barkdull*, a creditor of *Stocking*, and the appellee in this case, opposed the account and tableau upon various grounds ; the opposition being sustained in part, and the account ordered to be amended in accordance with the decree of the lower court, *John C. Morris* appealed.

It is necessary to notice only two of the grounds of opposition made by *Barkdull* to the account, &c. 1. He opposes item twenty-three of the account, " *John C. Morris*, account for provisions of the year the deceased died, $139 47," because there does not accompany the account a detailed statement of the items composing this amount; he denies that *Morris* furnished the deceased with any supplies, and calls upon him to advance proof in support of the charge. No evidence whatever was offered in support of this item—consequently the lower court rejected it. 2. Item twenty-six, " five notes due by *Daniel Stocking* and held by *J. C. Morris*, principal and interest, after deducting credits, amounts to $650 83," was opposed upon the grounds, that the notes which form the evidence of the charge, were found among the papers of the deceased by *Morris*, who was fraudulently attempting to recover the amount from the estate, he *(Morris)* having no title to them. The prescription of five years was also pleaded in bar to the notes. The opposition was sustained, and this item rejected.

One of the notes is payable to the order of *Collins* and *Baldwin*, and is not endorsed ; no evidence was offered to show by what means it came into *Morris'* possession ; this note is dated January, 1842, and payable one day after date. The second note is dated June 4th, 1842, payable the 1st of October following, for the sum of one hundred dollars, to *John B. Stinson* or order, and endorsed by *Stinson*, the payee, without recourse. There was no proof of *Stinson's* endorsement: both notes are also clearly prescribed. The third note is due on the first day of January, 1843, and payable to *Morris* or his order. The fourth is due on demand, to *Morris* or bearer, and is dated 17th January, 1843. On all of these notes there were credits, which if proven, would have taken them out of prescription ; but notwithstanding *Morris* was put upon his guard, no attempt was made by him to prove these payments upon the trial of the opposition.

More than five years had elapsed from the time these two last notes became due, before *Morris* was appointed curator of the estate. The first note was prescribed the day *Stocking* died; but had *Morris* used diligence, he might have been appointed curator of the estate previous to the second one being prescribed, and thus interrupt prescription; having failed to do so, he cannot now take advantage of his own neglect, and the prescription of five years must prevail. C. C. 3506. *Hite et als.* v. *Vaught*, 2d Ann. 970.

The curator reserved a bill of exceptions to the opinion of the court admitting the testimony of *L. Camp*, after the attorney for *Barkdull* had given the witness a written release. This the attorney had clearly a right to do, and the testimony was properly received. *Paxton* v. *Cobb*, 1 L. R. 137.

The appellee has asked that the judgment of the lower court be amended in his favor, by placing him upon the account and tableau of distribution as a privileged creditor for the sum of fifty-five dollars and seventeen cents, with eight per cent interest thereon from the 15th of August, 1847, to be paid out of the sale of the tinware found in the shop of the deceased at his death. This privilege was claimed in the lower court, but was rejected.

The note bears upon its face evidence that it was given for services rendered by *Barkdull* to the deceased. The testimony of *Lartigue* proves that *Barkdull* had been working in the tin-shop of *Stocking* for the last two years previous to the death of *Stocking*, and that he was his principal workman ; *Barkdull* making the tinware and *Stocking* peddling it off. *Barkdull* was in the shop at the time *Stocking* died, and remained in possession until the day of sale.

The workman or artisan has a privilege for the price of his labor on the thing which he has repaired or made, if the thing still continues in his possession. C. C. 3184.

*C. Ratliff*, for appellant, contended: *Daniel Stocking* died on the 1st of January, 1848, and *John C. Morris* applied for letters of curatorship on the 7th of January, 1848; his application was published on the 8th of January, and he qualified on the 12th of February, 1848. On the 10th of May, 1849, *Morris* filed an account and tableau of distribution of the funds of said succession, and

*Jesse Barkdull* filed an opposition to said account and tableau. This opposition being sustained in part, and the claims of *Morris* as a privileged and ordinary creditor being ruled out, he has appealed. The death of *Morris* being suggested to this court, and *George Harrison*, curator of the estate of *Stocking*, having made himself a party, the case is now in a condition to be disposed of.

There are but one or two questions involved in this controversy. The first one I will present for the consideration of the court is this : *John C. Morris* held five notes of *Daniel Stocking*, principal and interest amounts to $650 83 ; the plea of prescription was interposed to the allowance of these notes, and was sustained by the court; and we think erroneously. One note is dated January, 1842, and is payable one day after date ; the second is dated 4th January, 1842, and due the 1st of October, 1842 ; the third note is due 1st January, 1843; the fourth note is dated 17th January, 1843.

The question of prescription is a simple one. · 1. Does the payments on the notes, endorsed thereon at a time not suspicious, and the notes in the hands of the payee, take them out of prescription? Is it not a strong presumption, that these payments and receipts on the notes were the reasons why suit was never brought to enforce their payment? But the main question is, two of the notes were not due five years before *Stocking* died, but were due five years before *Morris* was qualified as curator; one note was due five years the day *Stocking* died ; the other was due five years on the 17th January, 1848 ; *Stocking* died on the 1st January, 1847 ; *Morris* applied for letters of curatorship on the 7th; on the 8th, his application was published, and on the 12th of February he was qualified as curator, &c. Now it is urged that prescription runs against those notes, because *Morris* could have qualified sooner; that he could have applied next or the same day *Stocking* died, and that he did not qualify as soon after the time that the notice expired as he might have done. It is clear *Stocking* had no legal heirs at his death; his estate was a vacant one ; *Morris* applied for letters in six days after his death, and was qualified in twenty-two days after he applied. During this period there was no one to make a demand on, nor bring a suit against, and after *Morris* was qualified as curator he could not sue himself. Now, the question is, did prescription run during this short delay in *Morris* obtaining his letters? We think not: no one opposed *Morris'* application and he was qualified in a reasonable time, and during the time there was no one he could sue on these notes, there was no danger during *Stocking's* lifetime of prescription running against these notes, as he was making payments from time to time on them, and kept them alive. Prescription does not run against a party when he is incapacitated from suing, and as *Morris* was proceeding to qualify without opposition, his doing so a day sooner or a day later would not change the relation of the parties, as he could not sue before, nor could he sue after he was qualified. The judgment sustaining the plea of prescription is certainly erroneous.

2. The next question we will present for the consideration of the court is, is *Barkdull* a privileged creditor of the estate of *Stocking?* We think not. He was a journeyman in his *(Stocking's)* tin-shop, but as such had no privilege on *Stocking's* estate, if he had a privilege at all, it was only upon the materials he worked on ; and there is no evidence that a single thing that he made was sold at the sale. C. C. 3184. 2d Ann. 874.

The claims of *Barkdull* consisted of a due-bill for $37 19, dated the 21st of September, 1846 ; it is clear this is no privilege. The other is a note for $55 17, dated 15th August, 1847, it is clear this is no privilege. C. C. 3174. The next item is an account of *McCombs* and *Clauss*, transferred to *Barkdull* by *Clauss*. There is no evidence in support of this item, except the evidence of *Clauss* the transferrer. The counsel for *Morris* objected to the reception of *Clauss* as a witness because he was interested ; the counsel for *Barkdull* then entered a release of any recourse against the witness on the part of *Barkdull*. The counsel for *Morris* objected that the attorney of record had no power to release the witness, it was an act of ownership, an alienation of so much property, rights and credits, which none but the owner or a duly authorized agent for that purpose could do; the court admitted the evidence, and the curator took his bill. We think the court erred in this, the counsel for *Barkdull* has in his brief stated that the notes opposed by him were found among the papers of the deceased by *Morris*, who was fraudulently attempting to recover the amount from the estate. As the record is not before me I will not be positive, but according to my recollection, no such allegation is in the opposition. Certain I am that

SUCCESSION OF no proof was offered in support of such a charge, and it is a reflection upon a
STOCKING. worthy officer who made the inventory, and unless such a charge was made in good earnest and well supported by evidence, common prudence and self respect says they should be let alone. The court will examine the inventory and see how fallacious this charge is.

In conclusion, we contend that the judgment of the court below is erroneous; the notes opposed by *Barkdull* is not prescribed and should be allowed; *Barkdull's* due bill and note is not privileged, and should be put down only as ordinary claims; the account of *McCombs* and *Clauss* transferred to *Barkdull* is not proved by any evidence; the evidence of *Clauss* should have been rejected, upon the grounds stated in curator's bill of exceptions.

The judgment of the court was pronounced by

SLIDELL, J. We think the plea of prescriptions was properly maintained. See Civil Code, 3505, 3506. *Hatch* v. *Gilmore*, 3d Ann. 509.

We also concur in the refusal of a privilege to *Barkdull* which he claimed under article 3184 C. C., No. 2. It is a sufficient reason for doing so, that it is not proved, that the articles upon which he worked existed at the death of *Stocking*, and that the money in the hands of the curator for distribution, was the proceeds of sale of those articles.

We incline to the opinion that the judge erred in admitting an interested witness to be sworn on behalf of *Barkdull* upon the execution of a release in his favor by *Barkdull's* attorney of record, to whom no special authority appears to have been given. See *Ball* v. *Bank of Alabama*, 8 Alabama 590. *Marshall* v. *Nagel*, 1 Baley, 308. *Springer* v. *Whipple*, 5 Shep. 351. *York Bank* v. *Appleton*, Ib. 55. *Murray* v. *House*, 11 Johnson, 464. But the item dependant upon the testimony of the witness is so small, that we have not considered the matter of sufficient moment to authorize a reversal, and impose upon the parties the expense of further litigation.

Judgment affirmed, with costs.